IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDGARDO COLON, : | |
| Petitioner, : | |
| v. : | CRIMINAL NO. 05-CR-123-2 |
| : | CIVIL NO. 07-CV-1118 |
| UNITED STATES OF AMERICA, : | |
| Respondent. : | |

**AMENDED MEMORANDUM OPINION & ORDER**

**RUFE, J.**                                                                                                           **January 5, 2009**

Edguardo Colon ("Petitioner") pleaded guilty to a federal drug trafficking offense through a plea agreement that included a general waiver of his right to collaterally attack his sentence ("Plea Agreement"). Petitioner filed a *pro se* petition to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, claiming, *inter alia*, that his counsel at sentencing had been ineffective ("Petition").[1] The United States Government ("Government") responded by filing a Motion to Dismiss arguing that in the Plea Agreement Petitioner waived his right to bring a petition on the grounds asserted.[2] Petitioner then attempted to file an appeal to the Government's Motion to Dismiss.[3] Because the District Court had not yet evaluated or ruled on the merits of Petitioner's § 2255 claims the Third Circuit dismissed for lack of appellate jurisdiction.[4] This Court then ordered Petitioner, still acting *pro se*, to file a Response to the Motion to Dismiss, which he has done.[5] The

---

[1] Doc. No. 611.

[2] Doc. No. 621.

[3] Doc. No. 626.

[4] Doc. No. 643.

[5] Doc. No. 693.

1

Court has carefully considered these filings, as well as the Plea Agreement and the transcripts of all relevant hearings, and the matter is now ready for disposition.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was one of the orchestrating forces behind the "Sanchez Organization," an organization that distributed heroin from various locations in and around the downtown area of Allentown, Pennsylvania.[6]  Sometime before January 2002, Petitioner and Isaisa Sanchez began to sell "bundled" or pre-packaged heroin, purchasing "loose" heroin in large quantities and breaking it down for individual sale to street customers.  Petitioner and Sanchez hired employees who acted in various capacities to carry out drug sales and to collect drug proceeds on behalf of the organizational leadership.[7]  As a result of such activities Petitioner was charged with conspiracy to distribute more than 1 kilogram of heroin in violation of 21 U.S.C. §§ 846.[8]  Additionally, Petitioner was charged with one count of possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c).

Petitioner entered into a Plea Agreement with the Government on February 9, 2006, in which he agreed to plead guilty to the conspiracy count.  In return, the Government promised to dismiss the charge of possession of a firearm pursuant to 18 U.S.C. § 924(c).[9]  The Plea Agreement includes a provision whereby Petitioner waives his right to appeal or collaterally

---

[6] See Indictment [Doc. No. 32].

[7] Id.

[8] Id.

[9] Gov't Ch. Plea Mem. [Doc. No. 394] at *2.

2

attack his conviction and sentence in all but a few narrow circumstances.[10] The provision states, in relevant part:

> In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.
>
> (a)   Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.
>
> (b)   If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only claims that:
>
>> (1) the defendant's sentence on any count of conviction exceeds the statutory maximum for that count . . . .
>>
>> (2) the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines;
>>
>> (3) the sentencing judge, exercising the Court's discretion pursuant to United States v. Booker, 125 S. Ct. 738 (2005), imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court. If the defendant does appeal pursuant to this paragraph, no issue may be presented by the defendant on appeal other than those described in this paragraph.[11]

In addition, the Plea Agreement states that prior to signing it, Petitioner fully discussed his

---

[10] Guilty Plea Agreement ¶ 9.

[11] Id. at ¶9. The waiver did not contain a provision preserving constitutional claims.

3

options with his appointed counsel, David J. Goldstein, Esquire, and also that Petitioner was satisfied with Goldstein's services.[12]  Notably, the Plea Agreement also states that "[n]o one has promised or guaranteed to the defendant what sentence the Court will impose,"[13]

The Court held a change-of-plea hearing on February 9, 2006, in which Petitioner, Goldstein and Assistant United States Attorney John M. Gallagher participated.  The Petitioner's primary language is Spanish, although he does speak English. An interpreter was sworn in by the Court in order to translate the proceedings to the Petitioner if needed.  However, Petitioner replied to most of the Court's questions in English. The Court began by explaining to Petitioner that any answers or statements he might make in the hearing must be truthful.[14] Petitioner stated that he understood.[15]  The Court asked Petitioner if he was satisfied with the representation Goldstein had provided as counsel and he stated that he was.[16] The Court then explained to Petitioner the charges against him,[17] and Gallagher, at the Court's direction, recited the elements of the Plea Agreement.[18]  Gallagher explained that the Government was agreeing, at the time of sentencing, to move to dismiss the second Count against Petitioner, which was possession of a firearm in furtherance of a drug-trafficking crime.[19] Counsel also recited that the

---

[12] Id. at ¶ 10.

[13] Id. at ¶ 7.

[14] Feb. 9, 2006 Change of Plea Hrg. Tr., Feb. 19, 2006 ("Plea Hearing") at 3-4..

[15] Id. at 4.

[16] Id. at 7.

[17] Id. at 8-9.

[18] Id. at 9-10.

[19] Id. at 9.

4

Government was agreeing and stipulating that Petitioner participated in the conspiracy from January 2002 through August 2004 and that Petitioner was an organizer or leader of that conspiracy, though it was noted that he left the conspiracy before its completion. The Government stated that because Petitioner's guilty plea demonstrated acceptance of responsibility for his misconduct that he was eligible for a two-level downward departure from the sentencing guidelines.[20] The Government also noted that the agreement contained an appellate waiver.[21]

      Petitioner then informed the Court that he had read the Plea Agreement with his lawyer, had no questions about it and understood the rights that he was giving up by signing it.[22] Specifically, Petitioner stated that he understood that he was waiving his right to any habeas corpus motions or collateral attack of his conviction.[23] The Court explained to Petitioner that no particular sentence or outcome was guaranteed by the Plea Agreement,[24] which Petitioner confirmed that he understood.[25] At the conclusion of the hearing, Petitioner stated that no agreement other than that which had been reviewed at the hearing had been entered into.[26] Before the end of the hearing Mr. Goldstein asked the Court to note that the entire Plea Agreement was interpreted into Spanish for Petitioner before he signed it and that counsel's

---

[20] Id. at 10.

[21] Id. at 11.

[22] Id. at 10-15.

[23] Id. at 17.

[24] Id. at 19.

[25] Id.

[26] Id. at 27-28.

conversations with Petitioner occurred in Spanish, which Mr. Goldstein speaks.[27] It was expressly found that Petitioner's guilty plea was knowingly and voluntarily made, and that it was "not based on any other promises, apart from those [in the Plea Agreement]."[28] The Court accepted Petitioner's plea of guilty.[29]

On June 26, 2006, the Office of Probation ("Probation") filed its Pre-Sentencing Investigation Report ("PSIR") with the Court and Petitioner filed no objections. The Report states that Petitioner's Offense Level is thirty-nine,[30] and that his Criminal History Category is one.[31] The result is a sentencing guidelines range of 262-327 months' imprisonment.[32]

The Court held a sentencing hearing on June 26, 2006. The Petitioner briefly addressed the Court, expressing regret for his actions and their impact upon his family.[33] Petitioner's attorney Mr. Goldstein spoke at length on behalf of his client, emphasizing Petitioner's lack of any previous criminal record and the hardships of some of Petitioner's personal circumstances, including never having had the benefit of a relationship with his father.[34]

---

[27] Id. at 30-31.

[28] Id.

[29] Id. at 33.

[30] PSIR at ¶84. The PSIR outlines how the offense level is calculated. The base offense level for a violation of 21 U.S.C. § 846 is thirty-six if the offense involved more than twenty-nine kilograms of heroin, which in Petitioner's case it did. The base level is then increased by two points because Petitioner possessed a firearm in connection with drug distribution. Another four levels are added because of Petitioner's role in the crime, which was as an organizer. Therefore, the adjusted offense level was forty-two. However, Petitioner received a two level reduction for acceptance of responsibility and one further level reduction per the Plea Agreement for a total offense level of thirty-nine.

[31] Petitioner had no criminal record prior to the charges for which he was convicted. PSIR ¶ 87.

[32] Id. ¶ 105.

[33] Sent. Hr'g Tr., June 26, 2006 ("Sent. Hr'g") [Doc. No. 548} at 17-28.

[34] Id. at 6-16.

At no time during the hearing did Petitioner raise any doubts about his Plea Agreement. Rather, on several occasions he told the Court that he understood that sentencing guidelines would be used, as well as reaffirmed his understanding that his crime carried with it a mandatory minimum sentence of ten years. [35] The Court then sentenced Petitioner to a prison term of two hundred and sixteen months, a term of five years supervised release, a special assessment of $100.00 and a fine of $1500.00.[36]

Soon thereafter, on July 7, 2006, Petitioner filed an appeal of his sentence to the Third Circuit still under the aegis of Mr. Goldstein acting as his attorney.[37] The Court issued its Memorandum Opinion regarding Petitioner's sentencing on July 27, 2006, noting in it that Petitioner had filed the appeal against the terms of his Plea Agreement and suggesting that the Third Circuit may lack jurisdiction to hear the case.[38] The Third Circuit granted Government's Motion to Enforce Appellate Waiver on September 16, 2006.[39] Petitioner did not file a writ of certiorari.

It was not until March 21, 2007 that Petitioner filed the instant *pro se* § 2255 habeas petition. The Petition presents a claim of ineffective assistance of counsel, in particular, as the Court understands it: (1) that Goldstein's representation fell below an objective standard of reasonableness resulting in Petitioner unknowingly and involuntarily entering into a guilty plea;

---

[35] Id. 12-13.

[36] Id. at 40.

[37] Notice of Appeal [Doc. No. 540].

[38] See Memorandum Opinion [Doc. No. 554] at 3 (citing United States v. Lockett, 406 F.3d 207, 214 (3d. Cir. 2005)).

[39] See Doc. No. 593.

7

(2) that counsel's ineffective representation caused Petitioner to take a plea agreement that charged him with an inaccurate amount of heroin, resulting in an enhanced sentence; and (3) that Petitioner is entitled to an evidentiary hearing on these matters.[40] On April 11, 2007 the Government moved to dismiss the Petition. Relying primarily on United States v. Khattak,[41] the Government argues that enforcing the terms of the Plea Agreement's collateral attack waiver is proper in this case, and would not work a miscarriage of justice.[42]

Petitioner then filed another notice of appeal, listing the "Motion Denying Reconsideration" of April 11, 2007 as the decision being appealed. The Court did not file any orders on April 11, 2007, the date listed in his Motion to Reconsider, and stated so in its Order dismissing same.[43] Petitioner's Motion for Issuance of a Certificate of Appealability was dismissed as inapplicable by the Court.[44] This Court issued an Order that Petitioner file a Reply to the Government's Motion to Dismiss.[45] Petitioner obliged.[46]

Reading Petitioner's Response brief in conjunction with his original petition it appears that the whole of his argument rests on a claim of ineffective assistance, the consequences of which he claims manifested in two specific ways. First, he claims that his decision to enter into a plea agreement at all is demonstrative of a failure to be properly

---

[40] See Petition pg 4-6. This summary reflects the Court's interpretation of the claims listed in the Petition.

[41] 273 F.3d 557 (3d Cir. 2001).

[42] Mot. Dism. at 5.

[43] See Doc. No. 623 (March 25, 2007).

[44] Doc. No. 640.

[45] Doc. No. 693.

[46] See Doc. No. 695.

counseled by his attorney. Secondly, he claims that ineffectiveness of counsel is reflected in a plea agreement in which he admitted to possession of more heroin than the amount that was alleged in the Government's indictment. At the outset of his argument, Petitioner acknowledges that he waived his right to appeal or collateral attack; however, he argues that his claims should be considered on the merits notwithstanding the waiver.[47] The Motion and Response are addressed below.

## II. DISCUSSION

As a threshold matter, this Court has jurisdiction over the instant Petition. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on habeas corpus petitions brought under § 2255 which begins to run from the latest of "the date on which the judgment of conviction becomes final" and a number of other occurrences not relevant to this case.[48] For purposes of a federal habeas petitioner, a conviction becomes final after the time allotted for direct appeal expires.[49] In a criminal case, a defendant may appeal from the district court's judgment within ten days of entry of judgment.[50] If a timely appeal has been taken to the appropriate circuit court, a defendant may file a petition for a writ of certiorari with the United States Supreme Court within ninety days of circuit court's denial of his appeal.[51]

---

[47] See Petition at pg. 6.

[48] 28 U.S.C. § 2255(f) (2006).

[49] Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999).

[50] FED. R. APP. P. 4(b)(1)(A)(I).

[51] SUP. CT. R. 13(1).

9

In this case, the Court entered judgment as to Petitioner's sentence on June 26, 2006. Petitioner had filed a notice of appeal even earlier on July 7, 2006, following the Court's sentencing hearing. On September 15, 2006, the Third Circuit enforced Petitioner's appellate waiver and dismissed his appeal. Petitioner did not file a petition for a writ of certiorari. As a result, Petitioner's conviction became final on December 14, 2006, ninety days after the Third Circuit dismissed his appeal. Because Petitioner filed on March 21, 2007 he is not barred by the one year statute of limitations, and this Court has jurisdiction.

### A. Applicable Law

The Third Circuit recently addressed when a plea agreements and their specific elements should be enforced. The collateral waiver provision of a plea agreement is generally enforceable if it was (1) knowing and voluntary; and (2) does not result in a "miscarriage of justice."[52] (The Third Circuit has not articulated a precise definition of the phrase "miscarriage of justice,"[53] However, in conjunction with Supreme Court precedent, the Third Circuit has offered guidance as to what factors should be considered when deciding whether a miscarriage of justice has taken place. In United States v. Khattak, the Third Circuit endorsed the four factors used by the First Circuit when considering whether to enforce a waiver. Those factors include "the clarity of the error, its gravity, its character (e.g. whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the

---

[52] See United States v. Mabry, 536 F.3d 231, 236 (3d Cir. 2008) (enforcing a petitioner's waiver of appellate and collateral attack rights).

[53] See Id. at 242 ("The Court has declined to identify a list of specific circumstances which would give rise to or constitute a miscarriage of justice.").

error on the government, and the extent to which the defendant acquiesced in the result."[54] The same standard applies to appeals of waivers of collateral review.[55]

The plain language of Petitioner's Plea Agreement makes it clear that a quintessential aspect of the bargain is that Petitioner is under an obligation to honor its provisions. Paragraph 9 of the Plea Agreement states, "In exchange for the undertakings made by the government in entering into this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution . . ."[56] Unless the Petitioner can establish that his waiver not entered into "knowingly and voluntarily" or that allowing affirming the waiver provisions would result in a "miscarriage of justice," this Court will enforce the Plea Agreement.

### B. Application Of Law To Petitioner's Arguments

#### 1. Knowing and Voluntary

Petitioner knowingly and voluntarily waived his right to appeal and to collaterally attack his sentence. Continuing to follow the standard set forth by the Third Circuit in Mabry, the Court must decipher "what occurred and what the defendant contends" and "review the terms of the plea agreement and change-of-plea colloquy."[57]

Through a combination of statements made in both his initial brief and his

---

[54] United States v. Khattack, 273 F.3d 557, 563 (3d Cir. 2001) (citing United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)).

[55] See United States v. Shedrick, 493 F.3d 292, 298 (3d. Cir. 2007). See also United States v. Goodson, __F.3d __, (3d Cir. October 16, 2008) in which the Third Circuit reiterates the broad discretion of the district courts have when conducting colloquies regarding plea agreements. In deciding whether a colloquy adequately informed a defendant of his waiver of appeal the Third Circuit looks to the "whole record" to determine whether there is a basis to hold an appellate waiver unenforceable.

[56] Plea Agreement at ¶ 9.

[57] Mabry, 536 F.3d at 238.

Response to the Government's Motion to Dismiss, Petitioner alleges that he did not knowingly and voluntarily enter into his Plea Agreement.  However, Petitioner neither contends that he was coerced nor that he entered into the agreement without knowledge of its terms. Instead he alleges that the Plea Agreement left him open to further proceedings for an indefinite period of time.[58] The Court entered its final judgment regarding the criminal charges against the Petitioner on June 26, 2006. Precisely what proceedings were left open is a mystery to this Court. Any allegation that the Plea Agreement left Petitioner at risk for "open-ended liabilty" must be dismissed as patently frivolous.

      With regard to Petitioner's knowing and voluntary nature of his plea , the transcript of the change of plea hearing reflects that the Court described the terms of the Plea Agreement to the Petitioner, taking special note of the waiver of appeal provisions, and asking specifically if Petitioner's decision to enter into the agreement was based upon any promises not listed in the agreement itself.[59] In light of the guidance provided by the Third Circuit's ruling in Mabry, the Court finds that the terms of the Plea Agreement were sufficiently reviewed by the Court and that Petitioner did not enter into the Plea Agreement under any impression that any additional promises had been made to him.  Furthermore the Court took the extra precaution of providing an English/Spanish interpreter for all court proceedings because Petitioner's first language is Spanish; however, Petitioner primarily used English when addressing the Court.  Additionally, Petitioner's counsel was fluent in Spanish and Petitioner was free to converse with him throughout the case in either English or Spanish. The Court can find no support in the record for

---

[58] See Reply at pg. 3.

[59] Plea Hr'g Tr. at 12-13.

Petitioner's argument that he did not knowingly and voluntarily enter into the Plea Agreement.

### 2. Miscarriage of Justice

The Court must "look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver."[60] The Third Circuit's "common sense approach" looks to the "clarity of the error; its gravity; its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum); the impact of the error on the defendant; the impact of correcting the error on the government; and, the extent to which the defendant has acquiesced in the result."[61]

Petitioner argues that he suffered a "miscarriage of justice" when, as a result of ineffective assistance of counsel, he entered into a plea agreement that charged him with possessing more heroin than was alleged in the indictment, resulting in an enhanced sentence.[62] However, the record lacks any support for this contention. The indictment charges Petitioner with conspiracy to distribute more than 1 kilogram of heroin.[63] The Plea Agreement recites an identical charge stating, "The defendant agrees to plead guilty to Count One of this indictment charging him with conspiracy to distribute more than one kilogram of heroin."[64] There is no difference between the amount of heroin charge in the indictment and the amount stated in the Plea Agreement. Petitioner's claim that his sentence was enhanced is more properly focused on

---

[60] Mabry, 536 F.3d at 243.

[61] United States v. Khattack, 273 F.3d 557, 563 (3d Cir. 2001) (citing United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)).

[62] See Petition at pg 6.

[63] See Indictment, Count I.

[64] See Plea Agreement ¶ 1.

the calculation of the advisory sentencing guidelines range based on his stipulation in his Plea Agreement that:

> ...defendant's provable participation in the charged [sic] conspiracy from January 2002, through August 2004, more than ten kilograms of heroin was distributed in furtherance of the criminal activity jointly undertaken by the defendant and the co-conspirators; this amount was within the scope of the defendant's agreement; this amount was reasonably foreseeable to the defendant in connection with the conspiracy; and the defendant's Guideline range should be calculated based on this amount, pursuant to U.S.S.G. § 2D1.1.[65]

U.S.S.G. § 2D1.1. establishes a level "36" as the base offense level for distribution of heroin at least 10 kilograms but less than 30 kilograms, which is the base offense level listed in paragraph 75 of Petitioner's PSIR: "The United States Sentencing Commission Guideline for violation of 21 U.S.C. § 846 is found in U.S.S.G. § 2D1.1.(1) and calls for a base offense level of 36, because the offense involved in excess of 29 kilograms of heroin." Petitioner was carefully colloquied on this stipulation in his Plea Agreement and acknowledged that he understood and accepted its terms. He was also informed that the advisory guidelines would be consulted and that he could not withdraw his guilty plea if he received a sentence that he did not like or think he deserved.[66]

The Third Circuit has held that "enforcing a collateral-attack waiver where constitutionally deficient lawyering prevented [a defendant] from understanding his plea or from filing a direct appeal as permitted by his plea agreement would result in a miscarriage of justice."[67] Here, enforcing Petitioner's waiver will not work a miscarriage of justice because the

---

[65] See Plea Agreement ¶ 8 (a).

[66] Plea Hr'g Tr. at 18-19.

[67] See United States v. Shedrick, 493 F.3d 292, 298 (3d. Cir. 2007).

alleged claims are factually false and fail to demonstrate deficient lawyering or Petitioner's lack of understanding of his Plea Agreement. No "miscarriage of justice" has taken place, and the waiver will be enforced.

### 3. Evidentiary Hearing

Petitioner's final claim is that he is legally entitled to an evidentiary hearing to address the questions outlined above. "The district court must grant an evidentiary hearing to determine the facts "unless the motions and files and records of the case conclusively show that the prisoner is entitled to no relief."[68]

Upon thorough examination and analysis, this Court has rejected the Petitioner's claim of ineffective counsel. Based on the standard set forth in Mabry the Court has found that Petitioner "knowingly and willingly" entered into the Plea Agreement as demonstrated by his responses to the Court's colloquy at his change of plea hearing. Additionally, the Court has rejected Petitioner's claim of ineffective counsel or "miscarriage of justice." As the record shows that the prisoner is entitled to no relief, the Court denies Petitioner's request for an evidentiary hearing.

### III.  CONCLUSION

For the reasons set forth above, the Court will enforce Petitioner's collateral attack waiver and grant the Government's Motion to dismiss his petition. Additionally, the Court finds that Petitioner does not raise any substantial issue of law, and that there is no probable cause for the issuance of a certificate of appealability.[69] An appropriate Order follows.

---

[68] United States v. Williams, 615 F.2d 585, 591 (3d Cir. 1980).

[69] A court should issue a certificate of appealability where a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner has not met his burden here.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDGARDO COLON,<br>　　　Petitioner,<br>　　v.<br><br>UNITED STATES OF AMERICA,<br>　　　Respondent. | :<br>:<br>:　CRIMINAL NO. 05-CR-123-2<br>:　CIVIL NO. 07-CV-1118<br>:<br>:<br>: |

### ORDER

**AND NOW**, this 5th day of January 2009, upon consideration of the Petition filed in the above captioned action pursuant to 28 U.S.C. § 2255 [Doc. No. 611], the Government's Motion to Dismiss [Doc. No. 621], and the Response [Doc. No. 693], it is hereby **ORDERED** as follows:

　　1.　　The Government's Motion is **GRANTED**;

　　2.　　Petitioner Edgardo Colon's Petition is **DENIED**;

　　3.　　There is no probable cause to issue a certificate of appealability.

The Clerk of Court is **DIRECTED** to **CLOSE** this case.

　　It is so **ORDERED**.

　　　　　　　　　　　　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　　　　　　s/Cynthia M. Rufe
　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　**CYNTHIA M. RUFE, J.**